UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE R., | Case No.:  21cv775-RBB |
| Plaintiff, | |
| | **ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW [ECF NO. 17]; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

On April 20, 2021, Plaintiff Renee R.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for supplemental security income benefits [ECF No.

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).

1

1]. [2]  On November 2, 2021, Defendant filed the Administrative Record [ECF No. 13].
On March 21, 2022, the parties filed a Joint Motion for Judicial Review [ECF No. 17].
Following the transfer of this matter from the Honorable Mitchell D. Dembin to
Magistrate Judge Ruben B. Brooks, Plaintiff consented to have this Court conduct all
proceedings on May 5, 2022 [ECF No. 20]. [3]

    For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED**,
and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

## I.    BACKGROUND

    Plaintiff Renee R. was born in 1954 and has worked as a telemarketer and home
health aide/companion.  (Admin. R. 372, 449, ECF No. 13.) [4]  On or about July 20, 2015,
Plaintiff filed an application for supplemental security income under Title XVI of the
Social Security Act.  (Id. at 22, 372-78.)  She alleged that she had been disabled since
November 6, 2013, [5] due to bipolar disorder, depression, post-traumatic stress disorder,
low back sciatica, radiculopathy, memory issues, and mood swings.  (Id. at 372, 433.)
Renee R.'s applications were denied on initial review and again on reconsideration.  (Id.
at 250-55, 257-63.)  An administrative hearing was conducted on September 8, 2017, by
Administrative Law Judge ("ALJ") James Delphey.  (Id. at 92-122.)  On January 18,
2018, the ALJ issued a decision and concluded that Renee R. was not disabled.  (Id. at

---

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as
a party pursuant to Fed. R. Civ. P. 25(d).

[3] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in
cases of this nature.  See S.D. Cal. Gen. Order No. 707 (Apr. 12, 2019).

[4] The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to
the administrative record using the page references contained on the original document rather than the
page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").
For all other documents, the Court cites to the page numbers affixed by CM/ECF.

[5] In a decision dated November 5, 2013, the day before the initial alleged onset date in this case, ALJ
Sherwin F. Biesman denied an earlier claim for supplemental security income benefits filed by Plaintiff.
(Admin. R. 161-75, ECF No. 13.)  Plaintiff amended the onset date in this case to July 20, 2015, during
her first administrative hearing.  (See id. at 92, 95.)

210-19.)  On December 21, 2018, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings.  (Id. at 241-45.)  A second administrative hearing was conducted by Judge Delphey on October 3, 2019.  (Id. at 123-60.)  On March 5, 2020, the ALJ issued a decision finding Plaintiff not disabled.  (Id. at 22-37.)  Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on September 14, 2020.  (Id. at 8-13.)  Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).[6]

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. § 405(g), 421(d) (West 2020).  The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ____, ____, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the

---

[6] On May 30, 2018, during the pendency of her request for review before the Appeals Council, Plaintiff filed another application for supplemental security income benefits with an alleged onset date of July 1, 2005.  (Id. at 23.)  The Social Security Administration denied this claim at the initial level of review on December 6, 2018, (id. at 339-44), before the Appeals Council's remand order.  ALJ Delphey made the later application part of the current record and treated it as duplicative of the application filed on July 20, 2015.  (Id. at 23.)

3

1    Commissioner's conclusions.  <u>Desrosiers v. Sec'y of Health & Human Servs.</u>, 846 F.2d

2    573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation,

3    the court must uphold the ALJ's decision.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir.

4    2005); <u>Ford v. Saul</u>, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm,

5    modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may

6    also be remanded to the Social Security Administration for further proceedings.  <u>Id.</u>

7         To qualify for disability benefits under the Social Security Act, a claimant must

8    show two things:  (1) He or she suffers from a medically determinable impairment that

9    can be expected to result in death or that has lasted or can be expected to last for a

10   continuous period of twelve months or more, and (2) the impairment renders the

11   applicant incapable of performing the work that he or she previously performed or any

12   other substantially gainful employment that exists in the national economy.  <u>See</u> 42

13   U.S.C.A. § 423(d)(1)(A), (2)(A) (West 2020).  An applicant must meet both requirements

14   to be classified as "disabled."  <u>Id.</u>  The applicant bears the burden of proving he or she

15   was either permanently disabled or subject to a condition which became so severe as to

16   render the applicant disabled prior to the date upon which his or her disability insured

17   status expired.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995).

18        In supplemental security income cases, the Commissioner makes this assessment

19   by employing a five-step analysis outlined in 20 C.F.R. § 416.920.  <u>See also</u> <u>Tackett v.</u>

20   <u>Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps set forth in 20

21   C.F.R. § 404.1520).[7]  The burden of proof is on the claimant at steps one through four.

22   <u>Id.</u> at 1098.  First, the Commissioner determines whether a claimant is engaged in

23

24   _____

25   [7] The disability insurance benefits (DIB) and supplemental security income (SSI) regulations are
     virtually identical.  Parallel SSI regulations are found in 20 C.F.R. §§ 416.900–416.999 and correspond

26   with the last digits of the DIB citations (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. §
     416.920).

27
                                              4

28

1    "substantial gainful activity."  If so, the claimant is not disabled.  20 C.F.R. § 416.920(b)

2    (2019).  Second, the Commissioner determines whether the claimant has a "severe

3    impairment or combination of impairments" that significantly limits the claimant's

4    physical or mental ability to do basic work activities.  If not, the claimant is not disabled.

5    Id. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared

6    to a list of impairments that are presumed severe enough to preclude work; if the

7    claimant's impairment meets or equals one of the listed impairments, benefits are

8    awarded.  Id. § 416.920(d).  If not, the claimant's residual functional capacity is assessed

9    and the evaluation proceeds to step four.  Id. § 416.920(e).  Fourth, the Commissioner

10   determines whether the claimant can do his or her past relevant work.  If the claimant can

11   do their past work, benefits are denied.  Id. § 416.920(f).  If the claimant cannot perform

12   his or her past relevant work, the burden shifts to the Commissioner.  In step five, the

13   Commissioner must establish that the claimant can perform other work.  Id. § 416.920(g).

14   If the Commissioner meets this burden and proves that the claimant is able to perform

15   other work that exists in the national economy, benefits are denied.  Id.

### III.   DISCUSSION

17        ALJ Delphey determined at step one that Plaintiff had engaged in substantial

18   gainful activity from October 2018 to June 2019,[8] but otherwise had not engaged in

19   consistent substantial gainful activity since July 20, 2015, the amended alleged onset

20   date.  (Admin. R. 25-26, ECF No. 13.)  At step two, he found that Renee R.'s severe

21   impairments included degenerative disc disease of the lumbar spine, spinal stenosis, and

22   bicipital tendinitis of the right shoulder.  (Id. at 26.)  The ALJ stated that Plaintiff's

_____

[8] Plaintiff worked as a companion caregiver during this period.  (Admin. R. 25, ECF No. 13.)  On October 11, 2019, in recognition that she had earned above the substantial gainful activity limit after October 1, 2018, Plaintiff requested a closed period of disability from her application date, July 20, 2015, through October 1, 2018.  (Id. at 576.)  This request was denied by ALJ Delphey in his decision. (Id. at 23.)

hypertension and hernia repair were non-severe, as were her medically determinable mental impairments of anxiety disorder, depressive disorder, and mood disorder with bipolar and depressive traits.  (Id. at 27.)  He determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (Id. at 31.)  He then found that Renee R. retained the residual functional capacity to perform light work subject to additional physical limitations, and had no mental limitations.  (Id. at 32.)  At step four, ALJ Delphey determined that Plaintiff was able to perform her past relevant work as a companion caregiver and telephone solicitor.  (Id. at 36.)  Accordingly, he found that Renee R. had not been under a disability since July 20, 2015.  (Id. at 37.)

Plaintiff makes three arguments: (1) the ALJ committed error by finding that her mental impairments were not severe, and by failing to incorporate her mental limitations in her residual functional capacity, (see Joint Mot. 4-9, 15-16, ECF No. 17); (2) ALJ Delphey failed to properly consider the factors set forth in 20 C.F.R. § 416.927(c)(1)-(6) when evaluating the opinion of Dr. Anuj Gupta, her treating pain management physician, (id. at 16-20, 23-25); and (3) the ALJ erred by using the incorrect legal standard to evaluate her subjective symptoms, (id. at 25-26, 29).  The Court addresses each argument in turn.

**A.**   **ALJ's Evaluation of Mental Impairments**

    **1.**   **Step-two severity determination**

Plaintiff contends that ALJ Delphey committed error in his determination that her mental impairments were not severe impairments at step two of the disability evaluation.  (Id. at 4-7.)  She first argues that the ALJ failed to consider her diagnosis of post-traumatic stress disorder ("PTSD") in his evaluation.  (Id. at 5.)  Next, she asserts that the psychiatric consultative examinations performed by Dr. Gregory M. Nicholson supported a finding that her mental impairments limited her ability to perform basic work activities.

1    (Id. at 5-7.)  Defendant counters that substantial evidence supports the ALJ's

2    determination that Plaintiff's mental impairments were not severe.  (Id. at 9-13.)

3        At step two in the sequential evaluation, the Social Security Administration

4    ("SSA") considers the medical severity of the claimant's impairment.  20 C.F.R. §

5    416.920(a)(4)(ii).  To be found disabled, a disability claimant must have a medically

6    determinable physical or mental impairment or combination of impairments that is

7    severe.  Id.  A severe impairment is one "which significantly limits your physical or

8    mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  "Basic work

9    activities" include physical functions such as walking, standing, sitting, lifting, pushing,

10   pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding,

11   carrying out, and remembering simple instructions; use of judgment; responding

12   appropriately to supervision, co-workers, and usual work situations; and dealing with

13   changes in a routine work setting.  Id. § 416.922(b) (2019).  It is the claimant's burden to

14   establish that she has a medically severe impairment or combination of impairments.  See

15   Tackett, 180 F.3d at 1098 (confirming that the claimant bears the burden of proof at steps

16   one through four); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S. Ct 2287,

17   2294, 96 L.Ed.2d 119 (1987) ("It is not unreasonable to require the claimant, who is in a

18   better position to provide information about his own medical condition, to do so.").)

19       To determine the severity of Renee R.'s mental impairments at step two of the

20   sequential evaluation, the ALJ followed the "special technique" set forth in 20 C.F.R. §

21   416.920a(a) (2019).  This required him to first determine whether Plaintiff had medically

22   determinable impairments.  Id. § 416.920a(b)(1).  He was then required to rate the degree

23   of functional limitation in four broad functional areas (understand, remember, or apply

24   information; interact with others; concentrate, persist, or maintain pace; and adapt or

25   manage oneself) using a five-point scale (none, mild, moderate, marked, and extreme).

26   Id. § 416.920a(c)(3)-(4).  The regulations require an ALJ to "consider multiple issues and

27

28

all relevant evidence to obtain a longitudinal picture" of the overall degree of the claimant's functional limitation.  Id. § 416.920a(c)(1).  If the degree of limitation is rated as none or mild, the impairment is generally considered not severe.  Id. § 416.920a(d)(1).  The ALJ's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."  Id. § 416.920a(e)(4).

In this case, ALJ Delphey found that Plaintiff had medically determinable mental impairments of anxiety disorder, depressive disorder, and mood disorder with bipolar and depressive traits.  (Admin. R. 27, ECF No. 13.)  He next determined that for these impairments, Renee R. had only a mild degree of limitation in each of the four broad functional areas of mental functioning contained in the disability regulations.  (Id. at 27-28.)  The ALJ discussed the medical evidence, hearing testimony, opinion evidence, and prior administrative medical findings that he considered in making this determination.  (Id. at 27-31.)  He concluded that because Plaintiff's medically determinable mental impairments caused no more than mild limitations in any of the four broad functional areas, and the evidence did not otherwise indicate that there was more than a minimal limitation in her ability to perform work activities, Plaintiff's mental impairments were non-severe.  (Id. at 31.)

### a.    Post-traumatic stress disorder

Plaintiff argues that the ALJ erred in his evaluation of the severity of her mental impairments by failing to consider, or even mention, her PTSD in his decision.  (Joint Mot. 5, ECF No. 17.)  She cites to a psychiatric assessment performed on April 23, 2018, by Dr. Rachel Ross of MHS North Coastal Clinic, associated with County of San Diego Mental Health Services, to demonstrate that she suffers from PTSD.  (See id., citing

1 Admin. R. 897-98, 961-63, ECF No. 13.)[9]  Plaintiff, who is transgender and underwent

2 gender reassignment surgery in her twenties, was referred to MHS North Coastal Clinic

3 by BPSR Vista Clinic, where she had treated for many years for depression and PTSD,

4 for medication management closer to her home.  (Id. at 897-98.)  Her medications

5 included Prozac and Seroquel.  (Id. at 897.)  The assessment recounts Renee R.'s history

6 of multiple sexual assaults, rape, and prostitution, and her previous record of depression,

7 anxiety, and emotional dysregulation.  (Id.)  Plaintiff reported to Dr. Ross that she was

8 working three days a week as a caretaker for an older adult and her chief complaint was

9 not having enough money.  (Id. at 897-98.)  With respect to Plaintiff's PTSD, Dr. Ross

10 observed that the condition "manifests with anxiety, paranoia with flashbacks and

11 nightmares, and difficulty manag[]ing behavior when feeling triggered."  (Id. at 899.)

12 　　　While this assessment provides evidence that Plaintiff suffers from PTSD, it is

13 insufficient to establish that Plaintiff's PTSD was a severe, medically determinable

14 impairment.  See 20 C.F.R. § 416.921 (2019) ("We will not use your statement of

15 symptoms, a diagnosis, or a medical opinion to establish the existence of an

16 impairment(s).").  In order to be considered severe, an impairment must "significantly

17 limit[] your physical or mental ability to do basic work activities."  Id. § 416.920(c)

18 (2019).  Dr. Ross's report provides no indication that Renee R.'s PTSD significantly

19 limited her mental ability to perform basic work activities such as understanding,

20 carrying out, and remembering simple instructions; using her judgment; responding

21 appropriately to supervision, co-workers, and usual work situations; and dealing with

22 changes in a routine work setting.  Id. § 416.922(b) (2019).  Moreover, the record does

23 not support Plaintiff's argument that the ALJ failed to consider her PTSD, as the ALJ

24

25 _____

26 [9] Pages 961 through 963 of the administrative record are duplicative of pages 897 through 899.

27 (Compare Admin. R. 897-89, ECF No. 13, with id. at 961-63.)

28

1   relied on consultative medical opinions that accounted for Plaintiff's PTSD symptoms.

2   Dr. Nicholson, a psychiatrist who examined Renee R. on two occasions, on September

3   30, 2015, and November 21, 2018, provided a diagnostic impression that included

4   anxiety disorder.  (Admin. R. 635, 890, ECF No. 13.)  On both dates, he explained that

5   his diagnosis of anxiety disorder was based on Plaintiff's history of rape and report of

6   PTSD symptoms, including nightmares and memories about being raped.  (Id. at 632,

7   636, 887, 890.)  ALJ Delphey accorded partial weight to Dr. Nicholson's 2015

8   assessment and significant weight to his 2018 opinion, (see id. at 29); by doing so, he

9   implicitly acknowledged Plaintiff's PTSD.  But the ALJ did not specifically discuss

10   Renee R.'s PTSD.  Nevertheless, because Plaintiff cites no evidence that her PTSD

11   symptoms significantly limited her mental ability to perform basic work activities, the

12   ALJ's failure to specifically mention her PTSD was, at most, harmless error.  See

13   Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (defining

14   harmless error as such error that is "inconsequential to the ultimate nondisability

15   determination") (citation and internal quotation marks omitted).

16                    **b.    Dr. Nicholson's examinations**

17          Plaintiff next argues that the two psychiatric evaluations performed by Dr.

18   Nicholson support a finding that her mental impairments are severe.  (Joint Mot. 5-6,

19   ECF No. 17.)  During both of his examinations, Dr. Nicholson reviewed Plaintiff's

20   history, conducted a mental status examination, provided his diagnostic impressions, and

21   offered a functional assessment.  (Admin. R. 631-37, 886-91, ECF No. 13.)  In his

22   September 30, 2015 evaluation, the psychiatrist's diagnostic impression consisted of

23   gender identity disorder, psychotic disorder, anxiety disorder, and bipolar disorder.  (Id.

24   at 635.)  Based on his mental status examination, he opined that Renee R. was able to

25   understand, remember, and carry out simple one- or two-step job instructions, and follow

26   detailed and complex instructions; her ability to accept instructions from supervisors, and

27

28

maintain regular attendance in the workplace and perform work activities on a consistent basis was mildly limited; and she was moderately limited in her abilities to relate and interact with coworkers and the public, to maintain concentration and attention, persistence, and pace, and to perform work activities without special or additional supervision.  (Id. at 636.)  In his November 21, 2018 evaluation, Dr. Nicholson's diagnostic impression was of anxiety disorder and depressive disorder.  (Id. at 890.)  Following his review of Plaintiff's history and another mental status examination, his assessment of Renee R.'s functional limitations were the same as in 2015 except that her abilities to relate and interact with coworkers and the public, to maintain concentration and attention, persistence, and pace, and to perform work activities without special or additional supervision were mildly, rather than moderately, limited.  (Id. at 890-91.)

While Dr. Nicholson's September 30, 2015 opinion included moderate functional limitations which could serve as the basis for finding a severe mental impairment, his November 21, 2018 evaluation supported a finding that her mental impairments were no longer severe.  See 20 C.F.R. § 416.920a(d)(1) (providing that "none" or "mild" degrees of limitation indicate only a minimal limitation in ability to do basic work and will generally result in a finding that an impairment is not severe); see also id. Part 404 Subpt. P. App. 1 Listing 12.00(F)(2)(b) (2019) (defining a mild limitation as one in which the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited").  And although Plaintiff points to the ALJ's January 19, 2018 decision, in which he found that her mood disorder with bipolar and depressive features was severe, (see Admin. R. 213, ECF No. 13), this decision was vacated by the Appeals Council, (see id. at 242).  The ALJ was required under the regulations to "consider multiple issues and all relevant evidence to obtain a longitudinal picture" of the overall degree of the claimant's functional limitation.  See id. § 416.920a(c)(1).  Based on his analysis of the longitudinal evidence in the record before him at the time of the

1    decision currently under review, he accorded Dr. Nicholson's 2015 opinion "partial

2    weight" and his 2018 opinion "significant weight," (see Admin. R. 29, ECF No. 13),

3    findings not contested by Plaintiff.  Therefore, because substantial evidence supported the

4    ALJ's finding that the degrees of Plaintiff's functional limitations were none or mild, he

5    could properly find that her mental impairments were not severe.

6         **2.    Failure to incorporate mental limitations in Plaintiff's residual**

7              **functional capacity**

8         Plaintiff next contends that the ALJ erred by failing to consider her mental

9    limitations in his assessment of her residual functional capacity ("RFC").  (Joint Mot. 7-

10   9, 15-16, ECF No. 17.)  Defendant asserts that there is no binding authority supporting

11   Plaintiff's argument that an ALJ must include mild mental limitations in the RFC.  (Id. at

12   13-15.)

13        In assessing a claimant's RFC, an ALJ must consider the limiting effect of all

14   impairments, including those that are non-severe.  See 20 C.F.R. § 416.945(a)(2) (2019).

15   ALJ Delphey's non-severity finding was supported by substantial evidence of record;

16   nevertheless, the ALJ needed to account for the mild mental limitations underlying the

17   non-severity finding in his RFC assessment.  Plaintiff, relying on the Ninth Circuit's

18   unpublished decision in Hutton v. Astrue, 491 Fed. App'x 850 (9th Cir. 2012), argues

19   that the ALJ's failure to incorporate the mild limitations he found in each of the four

20   broad functional areas into her RFC constituted legal error.  In Hutton, the ALJ

21   determined at step two that the plaintiff's PTSD caused mild limitations in concentration,

22   persistence, or pace, but was non-severe.  Id. at 850.  The ALJ subsequently excluded

23   consideration of the claimant's PTSD in assessing RFC at step four because he

24   determined that the plaintiff lacked credibility.  Id.  Finding that the ALJ committed legal

25   error, the circuit court explained that "while the ALJ was free to reject Hutton's

26   testimony as not credible, there was no reason for the ALJ to disregard his own finding

27

28

that Hutton's [non-severe] PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace."  Id. at 851.

Numerous courts in the Ninth Circuit have followed Hutton and found reversible error where the ALJ failed to include mild mental limitations in the assessment of the claimant's RFC.  See, e.g., George A. v. Berryhill, Case No. 5:18-cv-00405-AFM, 2019 WL 1875523, at *4 (C.D. Cal. Apr. 24, 2019) (listing cases).  Other courts have found Hutton inapplicable when the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC.  See id. (listing cases); see also McIntosh v. Berryhill, No. EDCV 17-1654 AGR, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (finding Hutton distinguishable because "the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity[]"); Medlock v. Colvin, Case No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("The Agency requires an ALJ to consider the limiting effects of all impairments, including those which are non-severe.  (Citation omitted).  Consideration of 'the limiting effects of all impairments' does not necessarily require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work.").

Here, ALJ Delphey found at step two that Plaintiff's anxiety disorder, depressive disorder, and mood disorder with bipolar and depressive traits caused only mild limitations in the four broad functioning areas.  (Admin. R. 27-28, ECF No. 13.)  He observed that notwithstanding her allegations of disabling mental impairment, Renee R. had worked throughout the entirety of the period at issue as a companion caregiver on both a part-time basis and at a level constituting substantial gainful activity.  (Id. at 27, 29-31.)  The ALJ accurately summarized medical reports reflecting that "[a]lthough treating and examining source records observed that the claimant's recent memory

21cv775-RBB

appeared mildly impaired, the record shows [she] does not have any significant memory or other cognitive deficits." (Id. at 27.) He correctly noted that Plaintiff was "generally cooperative on examination, displayed basic social skills and appropriate eye contact, and interacted appropriately with examiners and medical providers during medical visits." (Id.) The ALJ also found that despite her statements that she had difficulty concentrating, Renee R. was "able to engage in good conversational exchange" with the psychiatric examiner, Dr. Nicholson, and was able to participate in activities requiring sustained concentration such as watching television, reading, preparing meals, and driving. (Id. at 28, citing id. at 524-27, 551-53.) In addition, ALJ Delphey provided an extensive discussion of the medical opinions regarding Plaintiff's mental impairments, including the two assessments performed by Dr. Nicholson on September 30, 2015, and November 21, 2018; the evaluations by state agency psychological consultants Michael Plasay, Ph.D., and Jeffrey Prickett, Psy. D., on October 15 and December 28, 2015, respectively; and the findings by state agency psychological consultant Jane V. Buerger, Ph.D., on November 30, 2018. (Id. at 28-31, citing id. at 186-87, 200-03, 233-34, 631-37, 886-91.)

The ALJ addressed Plaintiff's mental impairments extensively at step two, (see id. at 27-31), and briefly at step four. As part of his step-two discussion, he expressly stated that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe," while assessing Renee R.'s RFC. (Id. at 27.) In his step-four analysis, he reiterated that in formulating the RFC, he had "considered all symptoms" as well as the medical opinions in the record. (Id. at 32.) Plaintiff casts this as legal error; the Court disagrees. Although an ALJ must discuss and evaluate evidence substantiating his conclusions, he is not required to do so under any particular heading in his written decision. Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001)); see also Denney v. Saul, No. 1:18-cv-00689-GSA, 2019 WL 4076717, at *7 (E.D. Cal. Aug. 29, 2019) (finding that "[t]he ALJ did not

14

err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four.").  As long as the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment" in the RFC, and does not simply rely on "boilerplate language," there is no legal error. Medlock, 2016 WL 6137399, at *5.

The ALJ properly considered Plaintiff's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC.  Hutton does not apply.

## B.   ALJ's Evaluation of Treating Physician's Opinion

Plaintiff next argues that when evaluating the opinion of Anuj Gupta, M.D., her treating pain management physician, ALJ Delphey failed to properly apply the regulatory factors in effect for her claim, which was filed prior to the updated regulations effective on March 27, 2017.  (Joint Mot. 16-20, 23-25, ECF No. 17.)  The Commissioner contends that substantial evidence supported the ALJ's ascribing the most weight to the prior administrative finding of M. Gleason, M.D., a state agency medical consultant, and less weight to Dr. Gupta's opinion.  (Id. at 20-23.)

Dr. Gupta opined that Plaintiff could lift and carry less than ten pounds occasionally or frequently, stand and walk for less than two hours in an eight-hour workday, sit for two to four hours in an eight-hour workday, and needed to alternate between sitting and standing for 15-30 minutes.  (Admin. R. 1052-53, ECF No. 13.)  He cited Plaintiff's lumbar MRI and electromyograph ("EMG") results to support his assessment.  (Id.)[10]  The ALJ gave little weight to Dr. Gupta's opinion.  (Id. at 35.)  He explained:

---

[10] Plaintiff's lumbar MRI, taken on November 22, 2016, showed mild central and foraminal stenosis at L4-5 and facet hypertrophy at L4-5 and L5-S1.  (Admin. R. 707, ECF No. 13.)  Her EMG, performed on her lower extremities on August 15, 2018, showed electrodiagnostic evidence consistent with

1
2
3
4
5
6
7
8

      The undersigned gives little weight to Dr. Gupta's opinion, as his findings are vague and fail to articulate detailed analysis or description of the claimant's physical limitation and abilities.  Additionally, Dr. Gupta's findings are inconsistent with the generally benign physical examination findings throughout the adjudicatory period, as well as the claimant's testimony that she has continued to work full or part-time, as a companion caregiver (a light exertion occupation) despite her ongoing symptoms.  (Citations omitted.)  Accordingly, the record does not document any physical functioning limitations that would support the more restrictive limitations suggested by Dr. Gupta or preclude light exertion.  For these reasons, Dr. Gupta's assessment merits little weight.

9

(Id.)[11]

10

### 1.    Applicable standards

11
12
13
14
15
16
17
18

For claims filed before March 27, 2017, such as Plaintiff's, the standards for evaluation of opinion evidence in supplemental security income cases are set forth in 20 C.F.R. § 416.927(c).  See 20 C.F.R. § 416.927 (2017).  Under this version of the regulations, more weight is generally given to the opinions of treating sources than of nontreating sources.  Id. § 416.927(c)(2); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with" other evidence in the record, the ALJ gives it controlling weight.  20 C.F.R. § 416.927(c)(2).  If the ALJ

19
20
21

abnormalities involving the right fifth lumbar nerve root, which Dr. Gupta characterized as right L5 radiculopathy.  (Id. at 1039, 1045.)

22
23
24
25
26

[11] Under the Social Security Regulations, occupations are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 416.967 (2019).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  Id. § 416.967(b).  A job is classified as light "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  If a person is able to do light work, he or she can also generally perform sedentary work.  Id.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  Id. § 416.967(a).  Although a sedentary job is defined as work which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Id.

27
28

does not afford controlling weight to a treating physician's opinion, he is required to consider the following factors when deciding the weight to give to medical opinions:  (1) treatment relationship (including length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship); (2) supportability; (3) consistency with the record as a whole; (4) specialization; and (5) any other relevant factors that tended to support or contradict the medical opinion.  Id. § 416.927(c)(2)-(6).[12]

The ALJ is not required to accept the opinion of a treating physician.  Ford, 950 F.3d at 1154.  If the treating physician's opinion is contradicted, the ALJ must give "specific and legitimate reasons" to disregard the opinion.  Id.; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  An ALJ need not accept the opinions of any physician, including a treating physician, that are "unsupported by the record as a whole . . . or by objective medical findings."  Batson, 359 F.3d at 1195 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Ford, 950 F.3d at 1154; Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (holding that "the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability[]").

### 2.   Discussion

Dr. Gupta's opinion was contradicted by another medical opinion in the record, that of M. Gleason, M.D., the state agency mental consultant, who provided a physical

---

[12] For claims filed on or after March 27, 2017, the standards for evaluation of opinion evidence are set forth in 20 C.F.R. § 416.920c.  See 20 C.F.R. § 416.920c (2017).  Under the updated regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  See id. § 416.920c(a).  Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by evaluating their "persuasiveness."  Id.  In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors:  supportability, consistency, treatment or examining relationship, specialization, and "other factors."  Id. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  Id. § 416.920c(b)(2).

1   residual functional capacity assessment on September 24, 2018.  (Admin. R. 235-37, ECF

2   No. 13.)  Dr. Gleason determined that Plaintiff could lift and carry twenty pounds

3   occasionally and ten pounds frequently, stand or walk about six hours in an eight-hour

4   workday, sit for about six hours in an eight-hour workday, and had postural limitations

5   relating to her ability to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

6   (Id. at 236.)  Because Dr. Gupta's opinion, which amounted to a finding that Plaintiff

7   could perform only a sedentary level of exertion and was incapable of working for eight

8   hours in a day, was contradicted by Dr. Gleason's opinion that she had the ability to work

9   for an eight-hour workday at a light level of exertion, the ALJ was required to articulate

10  specific and legitimate reasons to reject Dr. Gupta's opinion based on substantial

11  evidence in the record.  Ford, 950 F.3d at 1154; Batson, 359 F.3d at 1195.  If rejecting a

12  treating physician's opinion, an ALJ should set out "a detailed and thorough summary of

13  the facts and conflicting clinical evidence, stating his interpretation thereof, and making

14  findings."  Garrison, 759 F.3d at 1012 (quotations and citation omitted).

15       The ALJ did so here.  ALJ Delphey assigned little weight to Dr. Gupta's opinion

16  regarding Renee R.'s functional limitations because, in part, he found them "inconsistent

17  with the generally benign physical examination findings."  (Admin. R. 35, ECF No. 13.)

18  The ALJ could properly discredit Dr. Gupta's opinion on this basis.  See Batson, 359

19  F.3d at 1195.  In his discussion of Dr. Gupta's opinion, the ALJ noted that the physician's

20  physical exams consistently showed a slow gait but no limp, an inability to perform heel-

21  to-toe and toe-to-heel walk, tenderness to palpation of the lumbar spine, a reduced range

22  of motion of the dorsolumbar spine, intact and symmetrical sensation in the lower

23  extremities, 4/5 motor strength in the right lower extremity, 5/5 motor strength in the left

24  lower extremity, positive straight leg test on the right side, normal reflexes, and normal

25  lumbar lordosis.  (Admin. R. 35, ECF No. 13, referring to id. at 681, 686, 690, 692-93,

26  697-98, 1045, 1049.)  While these findings constitute a mix of both normal and abnormal

27

28

results, there is medical evidence in the record interpreting the findings as permitting a light level of work, contrary to Dr. Gupta's opinion that Plaintiff was unable to work a full eight-hour workday.  Specifically, Dr. Gleason, the state agency physician, noted these physical exam findings, as well as the spinal stenosis seen on Plaintiff's lumbar MRI, and determined that Plaintiff was able to perform light work.  (Id. at 237; see also id. at 845, 867.)  The ALJ additionally referenced treatment notes from a June 18, 2018 appointment with Dr. John H. Clancy, at which Plaintiff complained of joint pain and right hip pain, but a physical exam of her right hip showed no tenderness or acute symptoms and good range of motion, and her lumbar spine showed no tenderness or spasms, normal lordosis, and range of motion consistent with her age.  (Id. at 797-98.)  The ALJ could legitimately conclude, based on substantial evidence in the record, that Plaintiff's physical examination findings conflicted with and undermined Dr. Gupta's opinion.

ALJ Delphey also assigned little weight to Dr. Gupta's opinion because he determined that the doctor's restrictive assessment of his patient's functional abilities was inconsistent with Renee R.'s hearing testimony regarding her full- and part-time work as a companion caregiver.  (Id. at 35.)  Plaintiff's statements that she occasionally worked more than three-and-a-half hours a day, (see id. at 130-31), and once sat for twelve hours with a patient, (id. at 133), did not comport with Dr. Gupta's assessment that Plaintiff was able to sit for only two to four hours per workday.  (See id. at 1053.)  The inconsistency between Plaintiff's hearing testimony and Dr. Gupta's opinion constituted another specific and legitimate reason to discount the treating physician's opinion.  The ALJ was therefore not required to give Dr. Gupta's opinion controlling weight because he properly found the opinion was not well-supported by objective medical findings or consistent with other evidence in the record.  See 20 C.F.R. § 416.927(c)(2).

1   Under the applicable regulations, the ALJ was next required to evaluate the factors

2   set forth in 20 C.F.R. § 416.927 to determine the weight to give to Dr. Gupta's opinion.

3   See id.  Plaintiff, relying on Trevizo v. Berryhill, 871 F.3d 664 (9th Cir. 2017), contends

4   that ALJ Delphey did not fully do so in this case.  (Joint Mot. 17-20, 24-25, ECF No. 17.)

5   She appears to contend that if the ALJ had applied all of the regulatory factors to Dr.

6   Gupta's opinion, more weight would have been given to the opinion because the doctor

7   was "a specialist in treating pain" and had a "longitudinal treating relationship" with

8   Plaintiff that spanned more than three years.  (Id. at 20.)  She argues that the ALJ only

9   took one regulatory factor, consistency, into account, and thus committed error.  (Id. at

10   24.)

11   In Trevizo, the Ninth Circuit found that the ALJ's failure to consider the regulatory

12   factors constituted reversible error.  Trevizo, 871 F.3d at 676.  As Plaintiff herself

13   recognizes, however, Trevizo does not require a comprehensive analysis of each

14   regulatory factor.  (See Joint Mot. 17, ECF No. 17.)  Rather, district courts have

15   interpreted Trevizo as requiring "some indication" that the ALJ considered the factors.

16   See Hoffman v. Berryhill, Case No.: 16-cv-1976-JM-AGS, 2017 WL 3641881, at *4

17   (S.D. Cal. Aug. 24, 2017) report and recommendation adopted by 2017 WL 4844545

18   (S.D. Cal. Sept. 14, 2017); see also Quinones v. Comm'r Social Security, Case No.:

19   19CV274-W (BLM), 2019 WL 4193391, at *8 (S.D. Cal. Aug. 14, 2019) report and

20   recommendation adopted by 2019 WL 4193391 (S.D. Cal. Sept. 4, 2019).

21   In this case, the ALJ recognized that Dr. Gupta was Plaintiff's pain management

22   specialist and cited to records from seven of her visits with the doctor, spanning a period

23   of nearly three years; the records referenced the caudal epidurals, facet injections, and

24   transforaminal epidural provided by the physician for pain relief and diagnostic purposes.

25   (See Admin. R. 35, ECF No. 13, citing id. at 681, 686, 690, 692-93, 697-98, 1045, 1049.)

26   It is apparent from ALJ Delphey's discussion of Dr. Gupta's opinion that the ALJ

27

28

considered the doctor's specialization as well as the treatment relationship, including the length, nature, and extent of the relationship.  See Yantos v. Berryhill, Case No.: 15cv02733 JAH-BGS, 2018 WL 899126, at *6 (S.D. Cal. Feb. 14, 2018) (finding that the ALJ demonstrated in one sentence that he had considered that the plaintiff's treating physician was a specialist, had an ongoing treatment relationship with the plaintiff, and understood the nature and extent of the treatment).  But while it is generally the case that the longer a treating source has treated the claimant and the more times the patient has been seen by the doctor, the more weight will be given to the source's opinion, (see 20 C.F.R. § 416.927(c)(2)(ii)), this factor is not determinative, nor is the physician's specialization, because the ALJ must also consider supportability, consistency, and other relevant factors.  See id. § 416.927(c)(2)-(6)

Under § 416.927, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."  See id. § 416.927(c)(3) (addressing supportability).  As discussed above, although he cited to Plaintiff's lumbar MRI and EMG results, Dr. Gupta's restrictive assessment of Plaintiff's functional abilities were not wholly supported by her physical examinations.  Renee R.'s only abnormal findings during Dr. Gupta's physical examinations included slow gait, inability to perform heel-to-toe and toe-to-heel walk, tenderness to palpation of the lumbar spine, reduced range of motion of the dorsolumbar spine, and positive straight leg test.  (Admin. R. 35, ECF No. 13, citing id. at 681, 686, 690, 692-93, 697-98, 1045, 1049.)  She also demonstrated normal findings including intact and symmetrical sensation in the lower extremities, almost full strength in her lower extremities, normal reflexes, and normal lumbar lordosis.  (Id.)  Another physician, Dr. Gleason, reviewed the same records and found that they supported the ability to perform work at a light exertional level.  (Id. at 235-37.) The ALJ could reasonably conclude, based on the evidence before him, that "the record

1   does not document any physical functioning limitations that would support the more

2   restrictive limitations suggested by Dr. Gupta or preclude light exertion." (<u>Id.</u> at 35.)

3   Additionally, "the more consistent a medical opinion is with the record as a whole, the

4   more weight we will give to that medical opinion." <u>Id.</u> § 416.927(c)(4) (explaining

5   consistency).  As discussed above, the ALJ found that Dr. Gupta's opinion was

6   inconsistent with Renee R.'s testimony regarding her work as a companion caregiver

7   throughout the period in question.  (Admin. R. 35, ECF No. 13.)  This is a further reason

8   to discount Dr. Gupta's opinion.  Moreover, beyond the inconsistency, the ALJ could

9   consider the fact that Plaintiff remained able to maintain work as a companion caregiver

10   in determining the amount of weight to give to Dr. Gupta's opinion.  (<u>Id.</u>; <u>see also</u> 20

11   C.F.R. § 416.927(c)(6) (requiring ALJ to consider any factors tending to support or

12   contradict a medical opinion).

13        The ALJ's decision reflects that he sufficiently considered the regulatory factors

14   under 20 C.F.R. § 416.927 in his evaluation of Dr. Gupta's opinion.

15   **C.   <u>ALJ's Evaluation of Subjective Symptoms</u>**

16        Finally, Plaintiff contends that the ALJ used the incorrect legal standard to evaluate

17   her subjective symptoms.  (Joint Mot. 25-26, 29, ECF No. 17.)

18        Pursuant to 20 C.F.R. § 416.929, when evaluating a claimant's disability claim, the

19   ALJ is required to "consider all your symptoms, including pain, and the extent to which

20   your symptoms can <u>reasonably be accepted as consistent</u> with the objective medical

21   evidence and other evidence."  20 C.F.R. § 416.929(a) (2019) (emphasis added); <u>see also</u>

22   <u>id.</u> § 416.929(c)(3) ("any symptom-related functional limitations and restrictions that

23   your medical sources or nonmedical sources report, which can <u>reasonably be accepted as</u>

24   <u>consistent</u> with the objective medical evidence and other evidence, will be taken into

25   account") (emphasis added); <u>id.</u> § 416.929(c)(4) ("Your symptoms, including pain, will

26   be determined to diminish your capacity for basic work activities . . . to the extent that

27

28

your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.") (emphasis added).

Here, the ALJ decided that Plaintiff's statements concerning "the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Admin. R. 33, ECF No. 13 (emphasis added).)  Renee R. argues, without citation to case authority, that the ALJ erred by applying an incorrect legal standard because he evaluated whether her statements were entirely consistent with the objective medical evidence and other evidence rather than whether they could reasonably be accepted as consistent with the evidence.  (Joint Mot. 25-26, 29, ECF No. 17.)  She asserts that her subjective symptoms statements should have been credited because they were reasonably consistent with the objective medical evidence and other evidence.  (Id. at 29.)  The Commissioner argues in response that Plaintiff is engaging in a "semantic argument" and does not address the substance of the ALJ's analysis of her subjective symptoms.  (Id. at 26.)

Plaintiff's argument is without merit.  She ignores that the ALJ recited the correct legal standard verbatim at the outset of his discussion of Plaintiff's subjective symptoms: "the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  (Admin. R. 32, ECF No. 13.)  His determination that Renee R.'s symptom statements were "not entirely consistent" with the objective medical and other evidence is not a misapplication of this standard.  Rather, it comports with his duty to "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence."  See SSR 16-3P, 2017 WL 5180304, at *6 (Oct. 25, 2017) (providing guidance regarding the evaluation of symptoms under 20

C.F.R. §§ 404.1529 and 416.929).  Indeed, SSR 16-3P routinely uses "consistent" and "inconsistent" to describe the determination to be made regarding the claimant's subjective symptoms, in place of the "reasonably be accepted as consistent" language contained in the regulations.  See SSR 16-3P, 2017 WL 5180304, at *8-*9.  "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation omitted).  They "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Id. (citation omitted).  Based on a reading of the ALJ's decision, the Court disagrees with Plaintiff that the ALJ sought to determine whether Renee R.'s statements were entirely consistent with the objective medical and other evidence. Rather, the Court views the ALJ's use of "not entirely consistent" as describing whether Plaintiff's statements could reasonably be accepted as consistent with the objective medical and other evidence in the record, as he was required to do.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  September 21, 2022

Hon. Ruben B. Brooks
United States Magistrate Judge

24

21cv775-RBB